Mod AO 442 (09/13) Arrest Warrant    AUSA Name & Telno: Jordan Estes, 212-637-2543

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| | |
|---|---|
| United States of America<br>v.<br>Omar Lee<br><br>_Defendant_ | ) <br> ) Case No.<br> )<br> ) **15 MAG 0400**<br> ) |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

_(name of person to be arrested)_   Omar Lee                                                                                ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

  Violation of Title 18, United States Code, Section 371

Date: __02/11/2015__

_Issuing officer's signature_

City and state:   New York, New York

The Honorable Michael H. Dolinger
_Printed name and title_

### Return

This warrant was received on _(date)_ 2/12/15 , and the person was arrested on _(date)_ 2/18/15
at _(city and state)_ Newport News, VA

Date: 2/18/15

_Arresting officer's signature_

John Hansen  ATF Special Agent
_Printed name and title_

Approved: _____
JORDAN ESTES
Assistant United States Attorney

Before: THE HONORABLE MICHAEL H. DOLINGER
United States Magistrate Judge
Southern District of New York

**15 MAG 0400**

- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA : **SEALED COMPLAINT**

- v. - : Violation of
18 U.S.C. § 371

ARMODIO LEE, JR., :
D'ANTHONY HILL, and
OMAR LEE, :

COUNTY OF OFFENSE:
Defendants. : NEW YORK

- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JACQUELINE L. ELBAUM, being duly sworn, deposes and says that she is a Special Agent with Bureau of Alcohol, Tobacco, Firearms & Explosives and charges as follows:

<u>COUNT ONE</u>
(Conspiracy to Violate Firearms Laws)

1. From at least in or about November 2014 up through and including in or about November 29, 2014, in the Southern District of New York and elsewhere, ARMODIO LEE, JR., D'ANTHONY HILL, and OMAR LEE, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate the laws of the United States, to wit, Title 18, United States Code, Sections 922(a)(3), 922(a)(5), and 922(a)(6).

2. It was a part and an object of the conspiracy that ARMODIO LEE, JR., D'ANTHONY HILL, and OMAR LEE, the defendants, and others known and unknown, not being licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, would and did transport into and receive in the State where they reside firearms purchased and otherwise

1

obtained outside that State, in violation of Title 18, United States Code, Section 922(a)(3).

   3. It was further a part and an object of the conspiracy that ARMODIO LEE, JR., D'ANTHONY HILL, and OMAR LEE, the defendants, and others known and unknown, not being licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, would and did transfer, sell, trade, give, transport, and deliver firearms to persons other than licensed importers, licensed manufacturers, licensed dealers, and licensed collectors, knowing and having reasonable cause to believe that those persons do not reside in the State in which the transferor resides, in violation of Title 18, United States Code, Section 922(a)(5).

   4. It was further a part and an object of the conspiracy that ARMODIO LEE, JR., D'ANTHONY HILL, and OMAR LEE, the defendants, and others known and unknown, in connection with the acquisition and attempted acquisition of firearms from a licensed importer, licensed manufacturer, licensed dealer, and licensed collector, would and did knowingly make false and fictitious oral and written statements and furnish and exhibit false, fictitious, and misrepresented identification, intended and likely to deceive such importer, manufacturer, dealer, and collector, with respect to facts material to the lawfulness of the sale and disposition of such firearms, in violation of Title 18, United States Code, Section 922(a)(6).

## OVERT ACTS

   5. In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

   a. On or November 28, 2014, ARMODIO LEE, JR. and D'ANTHONY HILL, the defendants, traveled from New York, New York to Virginia for the purpose of obtaining firearms to transport back to New York.

   b. On or about November 29, 2014, OMAR LEE, the defendant, arranged for ARMODIO LEE, JR. and HILL, the defendants, to be driven from OMAR LEE's residence located in Hampton, Virginia to a gun show in Hampton, Virginia.

2

    c. On or about November 29, 2014, ARMODIO LEE, JR. and HILL participated in the purchase of three guns at a gun show in Hampton, Virginia.

    (Title 18, United States Code, Section 371.)

    The bases for my knowledge of the foregoing charges are, in part, as follows:

    6. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives, and I have been personally involved in the investigation of this matter. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my conversations with law enforcement agents and others, and my examination of reports, records, and recordings. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

    7. Based upon my review of documents and conversations with another ATF Special Agent (Agent-1) who is personally involved in this investigation, I have learned, among other things:

    a. On or about November 25, 2014, a confidential source (CS)[1] told Agent-1 that OMAR LEE, the defendant, had approached the CS with an opportunity to quickly make money by purchasing an unspecified number of firearms on behalf of two individuals.

    b. According to the CS, OMAR LEE advised the CS that OMAR LEE's nephew, ARMODIO LEE, JR., the defendant, and ARMODIO LEE, JR.'s friend, D'ANTHONY HILL, the defendant, were traveling from New York to Virginia and were scheduled to arrive on or about November 29, 2014. OMAR LEE further explained to the CS that OMAR LEE planned to pick up ARMODIO LEE, JR. and HILL at a bus station in Hampton, Virginia, early in the morning on November 29, 2014. OMAR LEE asked the CS to pick up ARMODIO

---

[1] The CS did not receive compensation or any benefit in exchange for providing information to and working with law enforcement. The CS's information has proved accurate and has been corroborated by independent evidence obtained in the investigation.

3

LEE, JR. and HILL from OMAR LEE's home that same day and drive them to a nearby gun show in Hampton, Virginia, where the CS would purchase firearms on behalf of ARMODIO LEE, JR. and HILL, using their money.

        c.    On or about November 28, 2014, at Agent-1's direction, the CS placed a recorded call to OMAR LEE. The CS asked LEE to explain again what OMAR LEE wanted the CS to do regarding the firearm purchases. OMAR LEE again explained his plan for the firearm purchases. He further explained that ARMODIO LEE, JR. and HILL were looking to acquire between three and five firearms and would compensate the CS $100 for each firearm the CS purchased on their behalves.

        d.    On or about November 29, 2014, ATF Special Agents, including Agent-1, conducted a law enforcement operation for the controlled "straw" purchase of firearms by the CS on behalf of ARMODIO LEE, JR. and HILL. The controlled straw purchase took place at the Southeastern Gun & Knife Show held at the Hampton Roads Convention Center in Hampton, Virginia.

        e.    On November 29, 2014, Agent-1 provided the CS with an audio recording device to wear during the operation. Agent-1 searched the CS and the CS's vehicle for the presence of firearms and found none. Agent-1 then placed an additional recording device in the passenger compartment of the CS's vehicle.

        f.    Four ATF Special Agents (the "Surveillance Agents") conducted surveillance of ARMODIO LEE, JR. and HILL at the gun show. The Surveillance Agents observed the CS, ARMODIO, LEE, JR., and HILL at the gun show for approximately three hours. Over the course of those three hours, the Surveillance Agents watched the CS purchase a total of three firearms from three separate Federal Firearms Licensees ("FFLs").

        g.    During the selection process for the first firearm purchased, one of the Surveillance Agents ("Agent-2") observed ARMODIO LEE, JR. using a cell phone to take a picture of a KelTec 9mm pistol ("Firearm-1"). Agent-2 also overheard a partial conversation wherein ARMODIO LEE, JR. told the person on the phone to check out a picture he was sending. The Surveillance Agents observed the CS complete the paperwork required for a firearm purchase and approximately 25 minutes later, pay for and take possession of what appeared to be the same firearm from JG Weapons, a FFL.

4

h. The Surveillance Agents observed the CS order a 9mm Taurus pistol ("Firearm-2") from Patriot Services, a FFL, and complete the required paperwork related to that firearm purchase. The Surveillance Agents observed the CS subsequently pay for and take possession of Firearm-2 from Patriot Services.

i. The Surveillance Agents observed the CS order a 9mm SCCY pistol ("Firearm-3") from Quantico Tactical, a FFL, and complete the required paperwork relating to that purchase. The Surveillance Agents observed the CS pay for and take possession of Firearm-3.

j. The Surveillance Agents later observed the CS, ARMODIO LEE, JR., and HILL leave the gun show and enter the CS's vehicle. ATF Special Agents, including Agent-1, approached the CS's vehicle and removed all occupants.

k. During a search of the CS's vehicle, ATF Special Agents recovered Firearm-1, Firearm-2, and Firearm-3 from the floorboard of the vehicle on the passenger side.

l. ARMODIO LEE, JR. and HILL were then taken into temporary investigative detention and interviewed separately. ARMODIO LEE, JR. was interviewed by Agent-1 and another ATF Special Agent. HILL was interviewed by two other ATF Special Agents. During the interviews, ARMODIO LEE, JR. and HILL told the respective interviewing Agents that they traveled by bus from New York to Virginia. HILL said that they arrived at approximately 6 a.m. on November 29, 2014.

m. During the course of the interviews, ARMODIO LEE, JR. and HILL each gave verbal consent for the respective interviewing Agents to search his cell phone. A limited search of each cell phone was conducted on scene by the respective interviewing Agents.

　　i. The search of HILL's cell phone revealed a text message string between HILL and a phone number with a 347 area code (the "347 Number"), which showed a message from the 347 Number from that date, stating: "Check them prices, I told A wat I was lookin for." HILL had previously referred to ARMODIO LEE, JR. as "A" during the interview.

　　ii. The limited search of ARMODIO LEE, JR.'s phone revealed that a picture SMS text message of Firearm-1 was sent to a phone number with a 917 area code (the "917 Number").

    n. ATF Special Agents interviewed the CS at the conclusion of the operation. The CS stated during the interview that ARMODIO LEE, JR. paid the CS $300 for purchasing the firearms, and an additional $50 for gas money. The CS later returned the $350 to ATF Special Agents.

   8. I have reviewed audio recordings of the operation. Based on those recordings, I have learned, among other things:

    a. After the CS picked up ARMODIO LEE, JR., and D'ANTHONY HILL, the defendants, the CS discussed with ARMODIO LEE, JR. how the CS would know which guns to purchase on their behalf at the gun show. ARMODIO LEE, JR., HILL, and the CS agreed that the CS would walk around with ARMODIO LEE, JR. and HILL, and they would point out what guns that they wanted to the CS.

    b. At approximately 10:56 a.m., ARMODIO LEE, JR. directed the CS to purchase Firearm-1.

    c. At approximately 11:31 a.m., ARMODIO LEE, JR. directed the CS to purchase a Taurus pistol. Approximately eight minutes later, ARMODIO LEE, JR. told the CS to cancel the order, because he had found a Taurus pistol at a different table for a cheaper price. The CS cancelled the order for that firearm.

    d. At approximately 11:43 a.m., ARMODIO LEE, JR. directed the CS to purchase Firearm-2. At approximately 11:46 a.m., the CS indicated to a sales person that the CS wished to purchase Firearm-2.

    e. At approximately 11:57 a.m., ARMODIO LEE, JR. had a phone conversation with an unknown third party, in which he referenced firearm-purchasing activity.

    f. At approximately 12:38 p.m., ARMODIO LEE, JR. ordered the CS to purchase Firearm-3. The CS attempted to pay for Firearm-3 but did not have enough money. The CS then obtained $11 from HILL to cover the remaining costs of Firearm-3.

9. Based upon my review of a New York City Police Department ("NYPD") database, I have learned that the 347 Number is associated with an individual who is a New York resident. The 917 Number is associated with another individual who is a New York resident.

10. Based upon my search of the cellphones of ARMODIO LEE, JR. and D'ANTHONY HILL, pursuant to a search warrant, I have learned that ARMODIO LEE, JR. and HILL exchanged text messages on or about November 28, 2014, in which they agreed to meet at a bus stop located at 133 East Broadway, New York, New York. The text messages further reveal that ARMODIO LEE, JR. arrived at the bus stop at approximately 9:30 p.m. on or about November 28, 2014.

11. Based upon my review of bus schedules, I have learned that 133 East Broadway is a bus stop for a bus that travels from New York, New York to Hampton, Virginia. I believe that ARMODIO LEE, JR. and D'ANTHONY HILL, the defendants, met at that stop on or about November 28, 2014 to board the bus they took to Hampton, Virginia that night.

WHEREFORE, deponent prays that ARMODIO LEE, JR., D'ANTHONY HILL and OMAR LEE, the defendants, be arrested and imprisoned, or bailed, as the case may be.

JACQUELINE L. ELBAUM
Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Sworn to before me this
11th day of February, 2015

THE HONORABLE MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7